IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES L. PHILLIPS, Individually )
and on Behalf of All Others Similarly )
Situated, )
)
    Plaintiff, )
 v. )
)   1:09CV71
TRIAD GUARANTY INC., MARK K. )
TONNESEN, and KENNETH W. )
JONES, )
)
    Defendants. )

**MEMORANDUM OPINION**

On March 21, 2016, a hearing was held in this matter on, among other things, Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Motion") [Doc. #124]. It is determined that the terms and conditions of the Stipulation of Settlement[1] ("Stipulation"), as well as the Plan of Allocation[2], are fair, reasonable, and adequate as to the Class[3]. For the reasons explained below, Lead Plaintiff's Motion is granted.

I.

On December 7, 2015, the Court entered an order preliminarily approving the Stipulation; certifying a Class for settlement purposes only; approving the form

---

[1] The Stipulation of Settlement is Exhibit 1 to Docket Entry No. 117.
[2] The Plan of Allocation is set forth in the Notice of Proposed Settlement of Class Action. [Doc. #127, Ex. A-1 at 9-14.]
[3] The Class is defined both in the Stipulation at ¶ 1.3 and in the Court's Order Preliminarily Approving Settlement and Providing for Notice at 1 ¶ 2 [Doc. #123].

and content of the Notice of Proposed Settlement of Class Action ("Notice"), the Proof of Claim and Release, and the Summary Notice; finding that the proposed mailing and distribution of the Notice and publishing of the Summary Notice met the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process; appointing a Claims Administrator; and scheduling a hearing to determine whether the settlement and the Plan of Allocation should be approved, among other things. [Doc. #123.]

On December 29, 2015, the Summary Notice was published in Investor's Business Daily and transmitted over the PR Newswire. (Carole K. Sylvester Decl. ¶ 14 [Doc. #130].) Also in December 2015, the Claims Administrator established a toll-free number to accommodate inquiries from potential members of the Class and a website dedicated to the litigation with the Notice, the Proof of Claim, the Stipulation, and the Court's Order accessible and downloadable. (Id. ¶¶ 12-13.) As of March 14, 2016, the Claims Administrator had mailed 22,245 Claim Packages comprised of the Notice and the Proof of Claim and Release form to potential members of the Class and nominees. (Carole K. Sylvester Suppl. Decl. ¶¶ 1, 3 [Doc. #134]; see Sylvester Decl. ¶¶ 4-11 (detailing process for identifying recipients of Claim Packages).) At the hearing, Lead Counsel informed the Court that there had been no objections to the Stipulation, the Plan of Allocation, or the requests for attorneys' fees and expenses and no requests for exclusion. (See also Sylvester Suppl. Decl. ¶ 15 (noting that as of March 14, 2016, well after the February 19, 2016 deadline for requesting an exclusion, the Claims Administrator

had received no requests for exclusion).) No one was present at the hearing to speak in court about the fairness of the settlement or the Plan of Allocation despite having been notified of the opportunity to do so. (See Stipulation at 4.)

II.

Rule 23(e) of the Federal Rules of Civil Procedure provides, in part, that a court may only approve a proposed settlement that would bind class members after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991).

A.

To determine if the terms of the proposed settlement are fair and were "reached as a result of good-faith bargaining at arm's length without collusion," courts evaluate "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation." Id. at 158-59.

The posture of the case and the extent of discovery that had been conducted at the time settlement was proposed support a finding of fairness. The parties entered the Stipulation soon after Lead Plaintiff appealed the March 2015 dismissal of its Second Amended Complaint. (Jack Reise Decl. in Supp. of Mot. for

3

(1) Final Approval of Class Action Settlement & Approval of Plan of Allocation, & (2) an Award of Att'ys' Fees & Expenses ¶¶ 39-43 ("Reise First Decl.") [Doc. #129].) Although settlement comes at a relatively early stage in the litigation prior to formal discovery, Lead Plaintiff and its counsel are well-informed of the strengths and weaknesses of the merits of the case.

After the appointment of Lead Plaintiff and prior to filing the Amended Complaint in June 2009, Lead Counsel "thoroughly reviewed and analyzed all publicly available information regarding [Triad Guaranty, Inc. ("Triad")], including, but not limited to, its SEC filings, press releases, and securities analysts' reports about Triad." (Id. ¶ 19.) Lead Counsel retained a private investigation firm to assist with the factual investigation of claims by identifying and interviewing former employees of Triad about issues related to the asserted fraud claims. (Jack Reise Decl. Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Supp. for Appl. for Award of Att'ys' Fees & Expenses ¶ 6(e) ("Reise Second Decl.") [Doc. #131].) Lead Plaintiff's "comprehensive investigation . . . included identifying numerous potential witnesses[] and conducting interviews with several individuals with knowledge of the issues[.]" (Jack Reise First Decl. ¶ 48.) During the pendency of this case, Lead Counsel also had the benefit of briefing related to two motions to dismiss filed by Mark Tonnesen and Kenneth Jones ("Defendants"[4]), two oral arguments in opposition to the motions to dismiss, two Recommendations

---

[4] Triad filed a petition for relief under Chapter 11 of the Bankruptcy Code and was voluntarily dismissed from this action in October 2013. [Docs. #89, 100.]

4

by Magistrate Judges as to Defendants' motions to dismiss, and this Court's Memorandum Opinion and Order granting Defendants' motion to dismiss. (See Jack Reise First Decl. ¶¶ 17-39.) These factors support a finding that the terms of the Stipulation are fair. See Strang v. JHM Mortg. Sec. Ltd. P'ship, 890 F. Supp. 499, 501 (E.D. Va. 1995) (finding the posture of the securities fraud action and the extent of discovery evidenced a fair settlement "[a]lthough the settlement comes at an early stage in the litigation, even prior to the initiation of formal discovery, [because] . . . Plaintiffs have conducted sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations[]"); Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 829 (E.D.N.C. 1994) (finding that the posture of the case favored approval of the settlement because reaching agreement in principle prior to the notification of potential class members permitted class members to choose to be included or excluded based on the terms of the proposed settlement).

The circumstances surrounding the settlement negotiations and the experience of counsel in securities class action litigation also support a finding of fairness. The parties engaged in settlement negotiations as Lead Plaintiff prepared its opening brief to the Fourth Circuit. (Jack Reise First Decl. ¶ 41.) By this time, Lead Counsel had "carefully examined Lead Plaintiff's likelihood of success on the merits, the maximum provable damages following a successful appeal, and the likelihood of obtaining a larger settlement after continued litigation or collecting on a favorable judgment based on Defendants' ability to pay." (Id. ¶ 49.) After

5

negotiating for several weeks, the parties reached an agreement-in-principle. (Id. at ¶ 41.) The Fourth Circuit remanded the case on August 3, 2015 for the Court to review the proposed settlement agreement, after which the parties continued negotiations and ultimately signed the Stipulation on October 5, 2015. (Id. ¶¶ 42, 43.) Throughout the case, including settlement negotiations, Lead Plaintiff and Defendants were represented by counsel experienced in securities class action litigation and nationally recognized for their expertise in complex class action litigation. (Id. ¶ 50; Jack Reise Second Decl. Ex. E.) These factors support a finding of fairness. See In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654, 665 (E.D. Va. 2001) (finding that concerns of collusion were minimized because, in part, "counsel for both sides were nationally recognized members of the securities litigation bar" and that it was "appropriate . . . to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole"); Strang, 890 F. Supp. at 501-02 (recognizing "that Plaintiffs' counsel, with their wealth of experience and knowledge in the securities-class action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class[]"). Therefore, the Court finds that the terms and conditions of the settlement are fair.

B.

Courts evaluate the adequacy of the terms of a proposed settlement by analyzing

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

In re Jiffy Lube Sec. Litig., 927 F.2d at 159.

The relative strength of the merits of Lead Plaintiff's case, as well as difficulties of proof and strong defenses, support a finding that the terms of the settlement are adequate. To prevail in a securities fraud action, a plaintiff must show (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42, 125 S. Ct. 1627, 1631 (2005). "These substantive elements of a securities fraud claim are demanding." Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 623 (4th Cir. 2008). Although Defendants' motion to dismiss was not decided on the merits of the case, but was, instead, granted pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, Lead Counsel acknowledges that "the likelihood of reversal [on appeal] is unlikely and, thus, there is a significant likelihood of no recovery." (Reise First Decl. ¶ 51.) As Defendants' counsel highlighted at the hearing, among Lead Plaintiff's challenges here is the fact that Defendants actually purchased Triad stock during the Class Period. Defendants would likely argue these purchases negate any inference of scienter. Defendants would also likely argue that their

7

alleged misstatements were forward-looking statements, puffery, or otherwise immaterial.

In addition to the challenge Lead Plaintiff faces proving liability, there are hurdles to proof of causation. A plaintiff must establish that "the defendant's misrepresentation was a <u>substantial</u> cause of the loss by showing a direct or proximate relationship between the loss and the misrepresentation." In re PEC Sols., Inc. Sec. Litig., 418 F.3d 379, 387 (4th Cir. 2005). Lead Plaintiff has expressed concern that "loss causation and damage assessments of Lead Plaintiff's and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would be reduced to a 'battle of experts.'" (Memo. of Law in Supp. of Lead Pl.'s Mot. for Final Approval of Class Action Settlement & Approval of Plan of Allocation at 13 [Doc. #125].) While Lead Plaintiff believes that "it is likely that [it] could present evidence at trial that the aggregate damages exceed the amount of the Settlement," it recognizes "that assumes that most of the significant liability and damage issues would have been resolved in the Class' favor." (Id.)

The anticipated duration and expense of litigation also supports a finding of adequacy. "[S]ubstantial resources would be expended to proceed through discovery, summary judgment, trial and the post-trial appellate process if Lead Plaintiff was successful on appeal, without any guarantee of a better resolution for the Class." (Reise First Decl. ¶ 52.) See S.C. Nat'l Bank v. Stone, 139 F.R.D.

335, 340 (D.S.C. 1991) (noting that courts recognize that stockholder litigation is notably difficult and notoriously uncertain) (citation omitted).

Defendants' solvency and the likelihood of recovery on a litigated judgment support a finding that the settlement terms are adequate. Triad filed for bankruptcy and, in October 2013, was dismissed from the action. Defendants "do not possess the financial means to fund any potential settlement or judgment." (Reise First Decl. ¶ 53.) "[T]he only remaining source to fund a settlement or judgment was available insurance coverage," which "involved wasting policies that would further diminish available coverage the longer the litigation proceeded." (Id.) See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993) (affirming securities class action settlement where the impaired financial condition of the defendant predominated over all other factors); Chatelain v. Prudential-Bache Sec., Inc., 805 F. Supp. 209, 214 ("The certainty of payment through settlement points in favor of approval of the proposed [securities class action] settlement" where one defendant was engaged in bankruptcy proceedings and another only had limited insurance.).

Finally, the lack of opposition to the settlement supports a finding that the settlement terms are adequate. As explained in detail above, as of the date of the hearing, Lead Counsel had received no objection to the settlement and no requests to be excluded. See In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 257 (E.D. Va. 2009) ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.").

Therefore, the Court finds that the terms and conditions of the Stipulation of Settlement are fair, reasonable, and adequate.

C.

Like the settlement, the plan of allocation of settlement proceeds in a class action must be fair and adequate. See In re Neustar, Inc. Sec. Litig., No. 14cv885, 2015 WL 8484438, at *5 (E.D. Va. Dec. 8, 2015) (citing In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d at 668). "[T]he opinion of qualified counsel is entitled to significant respect[,] . . . and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." In re The Mills Corp. Sec. Litig., 265 F.R.D. at 258.

Here, "[t]he Plan of Allocation was prepared in consultation with Lead Counsel's internal economic consultants." (Reise First Decl. ¶ 60.) Its purpose "is to estimate the impact of the alleged misrepresentations on the price of Triad common stock during the class Period, and [it] reflects an assessment of the damages that could have been recovered as well as Lead Plaintiff's assessment of the likelihood of establishing liability." (Id.) The Plan of Allocation is set forth fully in the Notice and "provides that a Class Member will be eligible to participate in the distribution of the Net Settlement Fund only if that Class Member has a net loss on all transactions in Triad common stock, after all profits from transactions in Triad common stock during the Class Period are subtracted from all losses." (Id. ¶ 59; see also id. ¶¶ 62, 63 (providing details of the claim per share).) "If the amount in the Net Settlement Fund is not sufficient to permit payment of the total

10

Case 1:09-cv-00071-NCT-JLW Document 138 Filed 03/23/16 Page 10 of 12

claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants." (Id. ¶ 64.) The allocation of the settlement proceeds, as well as the lack of objection to the Plan of Allocation, lead the Court to find that the Plan of Allocation is fair and adequate. See Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (noting "the favorable reaction of the Class supports approval of the proposed Plan of Allocation"); In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d at 669 (finding the plan of allocation, as a general matter, treated class members fairly by awarding a pro rata share to claimants, "but also sensibly mak[ing] interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue").

III.

The Court hereby finds that due and adequate notice was directed to all persons who are members of the Class who could be identified with reasonable effort, advising them of the terms and conditions of the Stipulation of Settlement and the Plan of Allocation and of their rights to object thereto, and a full and fair opportunity was afforded to all persons and entities who are members of the Class to be heard with respect to the Stipulation of Settlement and the Plan of Allocation. The Court further finds that the terms of the Stipulation of Settlement are fair, reasonable, and adequate and that the formula for the calculation of the

11

claims of Authorized Claimants[5] set forth in the Notice of Proposed Settlement of Class Action provides a fair and adequate basis upon which to allocate the proceeds of the Net Settlement Fund.  The Court approves both the Stipulation of Settlement and the Plan of Allocation and hereby GRANTS Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation [Doc. #124].  A judgment and order dismissing this action with prejudice will be filed contemporaneously with this Memorandum Opinion.

The Court retains jurisdiction over implementation of the Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; disposition of the Settlement Fund; hearing and determining applications for attorneys' fees and expenses; and all parties hereto for the purposes of construing, enforcing, and administering the Stipulation and the Settlement.

This the 23rd day of March, 2016.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge

---

[5] Authorized Claimants is defined in the Stipulation at 9.