**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JAMES L. PHILLIPS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:09CV71 |
| TRIAD GUARANTY INC., MARK K. TONNESEN, and KENNETH W. JONES, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Motion") [Doc. #126].  On March 21, 2016, a hearing was held in this securities class action to determine the fairness, reasonableness, and adequacy of the proposed settlement and the amount of attorneys' fees and expenses to be awarded.  After the hearing, Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation was granted, and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses was taken under advisement while Lead Counsel filed additional requested support for its Motion.  The Court has reviewed all submitted materials and, for the reasons stated below, grants the Motion in full.

I.

This case dates back to January 2009 when James L. Phillips first filed suit against Defendants Triad Guaranty Inc., Mark K. Tonnesen, and Kenneth W. Jones

(collectively "Defendants") alleging violations of securities laws. After Western Pennsylvania Electrical Employees Pension Fund was appointed as Lead Plaintiff, an Amended Complaint was filed which Defendants moved to dismiss. A hearing on the motion was held, and the Magistrate Judge recommended granting it without prejudice to Lead Plaintiff's amending the complaint. Before the District Court reviewed the recommendation, Lead Plaintiff successfully moved to file a Second Amended Complaint which Defendants then moved to dismiss. A hearing on the motion to dismiss the Second Amended Complaint was held, after which the Magistrate Judge recommended denying the motion. In the meantime, Triad Guaranty Inc. was voluntarily dismissed after filing for bankruptcy. After reviewing Tonnesen's and Jones' objection to the recommendation, this Court granted the motion to dismiss the Second Amended Complaint, a decision that Lead Plaintiff appealed to the Fourth Circuit. During the early pendency of the appeal, the parties agreed to settle the suit and successfully sought Court approval of a $1.6 million settlement for a defined class of plaintiffs.

Lead Counsel now requests an award of 30% of the Settlement Amount[1] and $105,516.13 in expenses, together with interest earned on both amounts for

---

[1] The Settlement Amount is defined as "One Million Six Hundred Thousand Dollars ($1,600,000) in cash to be paid to the Escrow Agent pursuant to ¶2.1 of [the] Stipulation." (Stipulation of Settlement at 9 [Doc. #117-1].) Lead Counsel uses "Settlement Amount" (see Proposed Order Awarding Att'ys' Fees & Expenses at 1 [Doc. #140-1]) and "Settlement Fund" (see Notice of Additional Authority in Supp. of Lead Counsel's Mot. for an Award of Att'ys' Fees & Expenses at 2 [Doc. #140]) interchangeably. Settlement Fund is defined as "the Settlement Amount plus all interest and accretions thereto and which may be reduced by payments or

the same time period and at the same rate as that earned on the Settlement Fund until paid. [See, e.g., Doc. #140.]

## II.

The Supreme Court has long recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Both the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA") provide for an award of reasonable attorneys' fees and expenses in a securities class action. Rule 23(h) explains that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement[,]" provided certain procedures are followed. Fed. R. Civ. P. 23(h). Similarly, the PSLRA requires that the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class . . . not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). Although an award of attorneys' fees to counsel for the prevailing party in a class action securities fraud case is anticipated, a court has "an independent obligation to ensure the reasonableness of any fee request." In re MicroStrategy, Inc. Sec. Litig., 172 F. Supp. 2d 778, 785 (E.D. Va. 2001) (quoting

---

deductions as provided herein or by Court order. (Stipulation of Settlement at 9.) Because Lead Counsel's proposed order granting the instant Motion uses "30% of the Settlement Amount," so, too, does this Court.

In re Cendant Corp. PRIDES Litig., 264 F.3d 201, 281-82 (3d Cir. 2001)).  There are three objectives when determining a reasonable award of attorneys' fees in the PSLRA context – (1) to "adequately compensate lead counsel for the time expended on the case[,]" (2) "to account for the difficulty of the case, the degree of success achieved, and other qualitative factors[,]" and (3) to serve as an incentive "to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class in a securities fraud case." Id. at 787-88.

The PSLRA does not "prescribe a methodology for computing fees and expenses[.]" Id. at 785 (interpreting, consistent with its legislative history, 15 U.S.C. § 78u-4(a)(6) "as a limitation on the fees and expenses award by a court, not a prescription for the methodology to be used in computing the fees and expenses").  The Fourth Circuit has not required a particular method for calculating attorneys' fees in common fund cases. Archbold v. Wells Fargo Bank, N.A., No. 3:13CV24599, 2015 WL 4276295, *4 (S.D.W. Va. July 14, 2015); 5 William B. Rubenstein, Newberg on Class Actions § 15:66 (5th ed. 2015) (noting that the Fourth Circuit "has not explicitly ruled on the issue, a vacuum that the lower courts have interpreted as permitting them to" decide which method to use).  Courts either use the lodestar method, the percentage of the fund method, or a combination of both. See, e.g., In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 260 (E.D. Va. 2009) (explaining that, "[w]hile the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast

4

majority of courts in other jurisdictions consistently apply a percentage of the common fund method" and using the percentage method supplemented with the lodestar cross-check).

As its name implies, the percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund. Jones v. Dominion Res. Servs., Inc., 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009). The lodestar method requires the court to "determine the hours reasonably expended by counsel that created, protected, or preserved the fund[,]" then to multiply that figure by a reasonable hourly rate. In re MicroStrategy, Inc., 172 F. Supp. 2d at 786.

"[O]verwhelmingly", courts prefer the percentage method, Jones, 601 F. Supp. 2d at 758-59 (citing district court cases within the Fourth Circuit, Manual for Complex Litigation (Fourth) § 14.121 at 187, & Third Circuit Task Force Report, Selection of Class Counsel, 208 F.R.D. 340, 355 (Jan. 15, 2002)), in part because the percentage method closely associates the attorneys' fees with the overall result achieved, Jones, 601 F. Supp. 2d at 759. Nevertheless, even when courts use the percentage method, they may also use the lodestar as a cross-check when evaluating the reasonableness of the percentage requested. E.g., In re Neustar, Inc. Sec. Litig., No. 1:14CV885, 2015 WL 8484438, *7 (E.D. Va. Dec. 8, 2015) (characterizing the use of the lodestar as a cross-check for the percentage method as "the common practice within this Circuit"); In re The Mills Corp., 265 F.R.D. at 261 (noting that courts that supplement the percentage method with the lodestar cross-check "take advantage of the benefits of both

methods") (citation omitted).  This Court, too, is persuaded that the percentage of the fund method, supplemented with the lodestar cross-check, is the appropriate means by which to determine an award of attorneys' fees in this case.

The next step is to determine how to evaluate the reasonableness of the percentage of the fund that Lead Counsel requests.  Courts within this Circuit have used factors from Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978), or In re Cendant Corp., 243 F.3d at 733 (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)), or variations of the latter. See, e.g., In re Neustar, Inc., 2015 WL 8484438, at *7 (applying In re Cendant Corp. factors in securities class action with a common fund); In re The Mills Corp., 265 F.R.D. at 261 (applying In re Cendant Corp. factors in securities fraud class action with common fund); Smith v. Krispy Kreme Doughnut Corp., No. 1:05CV00187, 2007 WL 119157, at *1-3 (M.D.N.C. 2007) (applying Barber factors in ERISA class action with a common fund).  In addition, the Local Civil Rules of the District of South Carolina require that petitions for attorney's fees comply with the Barber requirements, which "are also relevant when a common fund is created and a percentage-fee method is sought in the application." D.S.C. L. Civ. R. 54.02.

The Barber factors include:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation

6

and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d at 226 n.28.

The In re Cendant factors include:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

243 F.3d at 733.

Barber was a Truth in Lending Act action in which counsel apparently was not seeking a percentage of the recovery as attorney's fees. Therefore, some district courts within this circuit believe that "[t]he Fourth Circuit has not yet identified the factors for district courts to apply when using the 'percentage of recovery' method." See, e.g., Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 462 (D. Md. 2014). Nevertheless, the Fourth Circuit has repeatedly acknowledged the importance of a court's review of these factors when determining the reasonableness of attorney's fees. For example, in In re MRRM, P.A., 404 F.3d 863, 867-68 (2005), the Fourth Circuit evaluated the propriety of the District of South Carolina's allocation of a class action attorneys' fee award among several law firms. It favorably acknowledged the district court's use of the Barber factors when the district court initially examined and granted the attorneys' fee request, apparently one for a percentage of the common fund. Id. at 867-68. In In re

7

Abrams & Abrams, P.A., 605 F.3d 238, 240, 244-49 (2010), the Fourth Circuit vacated an award of attorney's fees in a personal injury action in which the plaintiff's counsel sought the agreed-upon thirty-three percent contingency fee which the district court reduced to three percent without considering several "critically important factors" adopted in Barber.  In Berry v. Schulman, 807 F.3d 600, 616-19 (4th Cir. 2015), the Fourth Circuit found no abuse of discretion in the district court's award of attorney's fees in a class action, the specific dollar amount of which the parties had negotiated, and recognized that the court's lodestar evaluation of the reasonableness of the fee request was "in accord with several of the more prominent Barber factors."

The court in Loudermilk Serv., Inc. v. Marathon Petroleum Co. LLC, 623 F. Supp. 2d 713, 717-18 (S.D.W. Va. 2009), though, has explained why the In re Cendant factors are more appropriate than the Barber factors when attorneys seek fees as a percentage of the fund.  Because one of the advantages of the percentage of the fund method of awarding attorney's fees is to "tie[] the attorneys' award to the overall result achieved rather than the hours expended by the attorney[,]" the result achieved should be "the most prominent factor considered in the analysis." Id. at 718.  However, use of the Barber factors diminishes the importance of this factor because it is placed "within a great many Barber factors[.]" Id. (noting that the first Barber factor is the time and labor expended, which is of particular importance in a lodestar analysis).  Therefore, according to the Loudermilk Serv., Inc. court, "the Barber factors are not ideal

when separated from the lodestar calculation." Id. at 717; see also In re Wachovia Corp. ERISA Litig., No. 3:09CV262, 2011 WL 7787962, *3 (W.D.N.C. Oct. 24, 2011) (quoting Loudermilk Serv., Inc., finding persuasive its and other courts' use of the In re Cendant factors to evaluate the reasonableness of a request for a percentage of a common fund as fees, and then applying the In re Cendant factors).

While a literal review of the list of factors adopted in Barber supports the Loudermilk Serv., Inc. court's conclusion, the Fourth Circuit's own application of the Barber factors suggests that those factors incorporate and recognize most of the In re Cendant factors, in addition to the importance of the recovery. In In re Abrams & Abrams, P.A., the Fourth Circuit reviewed the district court's award of a three percent contingency fee, as opposed to the thirty-three percent agreed-upon contingency fee, in a personal injury case. 605 F.3d 238. The Fourth Circuit vacated the award, finding that the district court failed to address adequately the role of the contingency fee, the results obtained, and the fee awards in similar cases. Id. at 245. The court explained that contingency fees provide access to the courts for those who would otherwise have difficulty hiring representation. Id. at 245-46. They also shift "a significant portion of the risk of loss to the attorneys taking the case[,]" a risk for which the attorneys should be compensated. Id. at 246. The court noted that "it may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid, and it makes sense to arrange these fees as a percentage of

9

any recovery." Id.  Although the court's analysis was in the context of a

contingency fee award in a personal injury matter, the recognition of the

importance of an award as a percentage of recovery is not that dissimilar than the

fifth In re Cendant factor, risk of nonpayment.

The Fourth Circuit next described that "the most critical factor in

determining the reasonableness of a fee award is the degree of success obtained."

Id. at 247.  Thus, although it is placed "within a great many [other] Barber

factors," clearly the Fourth Circuit considers this factor particularly important.

Notably, too, the court stated that it "cannot ignore" that the plaintiff himself did

not object to the larger contingency fee award. Id.  These considerations are

similar to the first and second In re Cendant factors, the size of the recovery and

objections by those bound by the results.

Therefore, this Court is persuaded that the Barber factors, which Lead

Counsel cites in support of its Motion (Mem. of Law in Supp. of Lead Counsel's

Mot. for an Award of Att's' Fees & Expenses ("Mem. of Law in Supp.") at 7-8

[Doc. #127]), apply to the analysis of the reasonableness of Lead Counsel's

request for attorneys' fees.[2]

---

[2] Lead Counsel notes, and the Court agrees, that the following Barber factors are
not applicable to this case: preclusion of other employment, time limitations
imposed by the client or the circumstances, and the nature and length of the
professional relationship to the client. See Mem. of Law in Supp. at 8 n.8.

III.

A.

As is more thoroughly explained in the lodestar cross-check, infra § III.H.,

the first Barber factor, the time and labor expended, supports a finding of

reasonableness. Lead and Liaison Counsel and their paraprofessionals – nine

partners[3], eight associates, one staff attorney, two economic analysts, a research

analyst, an investigator, fifteen paralegals, and three members of the Shareholders

Relations Department – worked over 2,527[4] hours prosecuting this case. (See

Decl. of Jack Reise in Supp. of Mot. for (1) Final Approval of Class Action

Settlement & Approval of Plan of Allocation, & (2) an Award of Att'ys' Fes &

Expenses ("Decl. of Jack Reise") ¶ 69 [Doc. #129]; Decl. of Jack Reise Filed on

Behalf of Robbins Geller Rudman & Dowd LLP in Supp. of Appl. for Award of

Att'ys' Fees & Expenses ("Decl. on Behalf of Robbins Geller Rudman & Dowd

LLP"), Ex. A [Doc. #131-1]; Lead Counsel's Resp. to the Ct.'s Apr. 13, 2016

Order [Doc. #145].) After appointment as Lead Plaintiff and prior to filing an

Amended Complaint, Lead Counsel investigated all publicly available information on

Triad Guaranty Inc., including SEC filings, press releases, and securities analysts'

reports, and interviewed former employees of the company. (Decl. of Jack Reise

_____

[3] This figure includes Liaison Counsel, a partner at McDaniel & Anderson, L.L.P.
(See Decl. of L. Bruce McDaniel Filed on Behalf of McDaniel & Anderson, L.L.P. in
Supp. of Appl. for Award of Att'ys' Fees & Expenses [Doc. #132].)
[4] This figure reflects the adjusted hours after removing hours that Lead Counsel
initially erroneously included. (See Lead Counsel's Resp. to the Ct.'s Apr. 13, 2016
Order at 15 [Doc. #145].)

¶ 19.)  It responded in opposition to Defendants' first motion to dismiss, prepared

for and attended the hearing on the motion, and drafted a Second Amended

Complaint as a result. (Id. ¶¶ 21-26.)  It then responded in opposition to

Defendants' motion to dismiss the Second Amended Complaint, briefed a motion

to strike extraneous documents, and prepared for and attended the hearing on the

motions. (Id. ¶¶ 29-33.)  After Defendants Tonnesen and Jones objected to the

Magistrate Judge's Recommendation and Order, Lead Counsel responded in

support thereof. (Id. ¶¶ 37-38.)  Lead Counsel then appealed this Court's grant of

the motion to dismiss the Second Amended Complaint and, prior to filing its

opening appellate brief, engaged in weeks' settlement negotiations and preparation

of comprehensive settlement documents. (Id. ¶¶ 40-41, 43.)  The time and labor

that Lead Counsel expended support the requested fees' reasonableness.

                                          B.

        In further support of the reasonableness of the requested fees is the novelty

and difficulty of the questions raised in this securities fraud case.

> The very nature of a securities fraud case demands a difficult level of
> proof to establish liability.  Elements such as scienter, reliance, and
> materiality of misrepresentation are notoriously difficult to establish.
> Proving damages further implicate[s] complex economic modeling at
> the hands of sophisticated experts who, in order to ascertain the fluid
> and shifting effects of alleged widespread fraudulent reporting,
> necessarily engage[] in complex measurements of stock valuation and
> price movement.

In re The Mills Corp., 265 F.R.D. at 263 (internal citation omitted).  Lead Counsel

acknowledged in support of this Motion that "[f]rom the outset, this post-PSLRA

action was an especially difficult and highly uncertain securities case, with no assurance whatsoever that the Litigation would survive Defendants' attacks on the pleadings, motion(s) for summary judgment, trial, and appeal." (Mem. of Law in Supp. at 10.)  These difficulties are reflected in this Court's dismissal of the 226-paragraph Second Amended Complaint and the parties' settlement prior to the filing of any appellate briefs.  The complexity of this matter lends further support for the reasonableness of the requested fees.

## C.

For similar reasons, the third and ninth factors – the skill required to properly perform the legal services and the experience, reputation, and ability of the attorney – also support the reasonableness of the requested fees.  Prosecuting and managing "a complex national class action requires unique legal skills and abilities," Edmonds v. United States, 658 F. Supp. 1126, 1137 (D.S.C. 1987), particularly securities fraud cases, as noted above.  Lead Counsel is well suited, though, for this type of litigation.  It has offices across the nation and "currently represents more institutional investors, including public and multi-employer pension funds and domestic and international financial institutions, in securities and corporate litigation than any other plaintiffs' securities law firm in the United States." (Decl. on Behalf of Robbins Geller Rudman & Dowd, Ex. E [Doc. #131-5].)  The quality of Lead Counsel's advocacy in this complex matter is evidenced in its filings with the Court throughout the pendency of this matter.  Furthermore, Lead Counsel's skill and sophistication in prosecuting securities fraud actions was fundamental to any

13

potential success because Defendants were represented by equally sophisticated

attorneys from, among other law firms, Paul, Weiss, Rifkind, Wharton & Garrison,

LLP, which advertises that it is "widely recognized as having one of the nation's

preeminent securities litigation and regulatory practices." See

https://www.paulweiss.com/practices/litigation/securities-litigation.aspx.

Therefore, this factor supports a finding of reasonableness.

### D.

The next applicable factors, customary fee for like work and fee awards in

similar cases, also support a finding of reasonableness. "In this jurisdiction,

contingent fees of one-third . . . are common." Smith, 2007 WL 119157, at *2.

Furthermore, according to one source, Lead Counsel's request for 30% of the

Settlement Amount is in line with typical fees awarded for securities litigation.

From 1996 to 2010, the median attorneys' fees awarded in securities class actions

settling for less than $5 million was 33.3%. Svetlana Starykh & Stefan Boettrich,

Recent Trends in Securities Class Action Litigation:  2015 Full-Year Review, Fig.

32 (NERA Jan. 25, 2016).  From 2011 to 2015, the median attorneys' fees in

those same cases fell slightly to 30.0%. Id.

However, according to a review by Judge Cacheris of the Eastern District of

Virginia of recent securities fraud class actions and common fund cases in the

Fourth Circuit settling for less than $5 million, Lead Counsel's request is slightly

higher than the percentage awarded in those cases. See In re Neustar, Inc., 2015

WL 8484438, at *9 (providing a chart of cases from 1985 to 2014 awarding 25%

14

to 28%, with cases settling for $1.5 million and $2.5 million awarding 25%); see also In re The Mills Corp., 265 F.R.D. at 264 (providing a chart of district court cases within and outside of the Fourth Circuit from 1985 to 2009 awarding 18% to 33.3%, with cases settling for $1.5 million and $1.7 million awarding 25%). Nevertheless, the requested percentage is reasonable when all the other relevant factors are considered.

E.

The next applicable factor, whether the fee was contingent or not, also favors a finding of reasonableness. Liaison and Lead Counsel, involving nine partners, eight associates, one staff attorney, two economic analysts, a research analyst, an investigator, fifteen paralegals, and three members of the Shareholder Relations Department, prosecuted this case for years with the knowledge "that the only way [they] would be compensated was to achieve a successful result." (Decl. Jack Reise ¶ 74.) By so doing, Lead Counsel bore the risks involved with surviving dispositive motions, obtaining class certification, proving liability, causation, and damages, prevailing with experts, and litigating through trial and possible appeals. Not only does transferring the risk to Lead Counsel afford access to the courts that some plaintiffs would otherwise find difficult, but "it may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid, and it makes sense to arrange these fees as a percentage of any recovery." In re Abrams & Abrams, P.A., 605

15

F.3d at 246.  The risk borne by Lead Counsel in this complex case supports a finding of reasonableness.

F.

The amount in controversy and results obtained also support a finding of reasonableness.  As the Fourth Circuit recognized, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Id. at 247.  Lead Counsel sought damages for "all Persons who purchased Triad common stock between October 26, 2006 and April 1, 2008, inclusive, excluding all Defendants, their families or any trust of which any Defendant is the settler or which is for the benefit of any Defendant's family." (Stipulation of Settlement ¶ 1.3 [Doc. #117-1].)  As the procedural history of this case illustrates, the Magistrate Judge recommended granting the dismissal of the Amended Complaint, after which Lead Plaintiff filed a Second Amended Complaint.  Although the Magistrate Judge recommended denying the dismissal of the Second Amended Complaint, this Court dismissed the Second Amended Complaint.  Lead Counsel acknowledged that "[d]espite [its] appeal to the Fourth Circuit, the likelihood of reversal [was] unlikely and, thus there [was] a significant likelihood of no recovery." (Decl. of Jack Reise ¶ 51.)

During negotiations, "Lead Counsel carefully examined Lead Plaintiff's likelihood of success on the merits, the maximum provable damages following a successful appeal, and the likelihood of obtaining a larger settlement after continued litigation[.]" (Id. ¶ 49.)  Also informing the negotiations were Defendants

16

Tonnesen's and Jones's abilities to pay after Triad Guaranty Inc. filed for bankruptcy and was voluntary dismissed from the case. (Id. ¶¶ 49, 53.) The only remaining source of recovery for the class were Defendants Tonnesen's and Jones's insurance policies which included wasting policies "that would further diminish available coverage the longer the litigation proceeded." (Id. ¶ 53.) In light of these circumstances, the $1.6 million certain recovery for the class is notable and supports a finding of reasonableness.

### G.

Finally, the undesirability of the case within the legal community in which the suit arose supports a finding of reasonableness. According to Lead Counsel, no other firm moved to lead the litigation, "demonstrating that the vast majority of the securities bar that are routinely involved in this type of litigation deemed the case to be either undesirable or too risky." (Decl. of Jack Reise ¶ 75.) Lead Counsel's apparent singular willingness to bear the risks of prosecuting this action supports the reasonableness of its request for attorneys' fees.

### H.

A lodestar cross-check of the fees request confirms its reasonableness. "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." Boyd, 299 F.R.D. at 467. "When using lodestar as a 'cross-check,' the Court needs not apply the 'exhaustive scrutiny' typically mandated, and the Court may accept the hours

17

estimates provided by Lead Counsel." In re The Mills Corp., 265 F.R.D. at 264 (quoting Jones, 601 F. Supp. 2d at 765-66). Nevertheless, the Court must have enough information for its review of the time and rate submission to be a meaningful cross-check. In Boyd, the court recognized that it did not need to scrutinize the hourly rates and hours worked as closely as it would in a case awarding fees purely based on hours worked. 299 F.R.D. at 468. However, because counsel only submitted "the total hours spent by each attorney and other professional[s], with no specification of date or task[,]" the court lacked any "back-up detail" which made it "impossible to assess duplication of effort or unproductive time." Id. Thus, the court concluded that any argument that the 0.76 multiplier comparing the percentage requested to the lodestar was "artificially low" likely resulted from "an inflated lodestar given the characteristics of [the] case." Id.

Over the course of several requested filings, Liaison and Lead Counsel have submitted sufficient information for the Court to calculate a lodestar and use it to evaluate the reasonableness of the fees requested. [See Docs. #129, 131 & Exs., 132 & Exs., 136 & Exs., 140, 145 & Exs.] Liaison Counsel spent 104.38 hours on this litigation at $480 per hour for a lodestar amount of $50,102.00. [Doc. #132-1.] Lead Counsel spent 2,423.10 hours[5] prosecuting this case. [Docs. #131-1, #145-1.] The eight partners' hourly rates ranged from $640 to $880 per hour. [Doc. #131-1.] The eight associates' hourly rates ranged from $375 to

---

[5] See supra n.4.

$550 per hour, and the staff attorney's hourly rate was $350 per hour. (Id.)

Including the time and hourly rates of the other paraprofessionals, the lodestar

figure for Lead Counsel's work on this case is $1,352,518.50.[6]

Lead Counsel's hourly rates are much higher than the hourly rates generally

charged in this jurisdiction. However, they are "within the range of reasonableness

for PSLRA cases, where the market for class action attorneys is nationwide and

populated by very experienced attorneys with excellent credentials." In re

MicroStrategy, Inc., 172 F. Supp. 2d at 788. (See also Lead Counsel's Resp. to

the Ct.'s Apr. 13, 2016 Order, Ex. D (showing similar hourly rates charged by

Kessler Topaz Meltzer & Check, LLP in securities action filed in the W.D.N.C.)

[Doc. #145-4], Ex. E (showing similar hourly rates charged by Labaton Sucharow

LLP in securities action filed in the S.D.W. Va.) [Doc. #145-5], Ex. F (showing

similar hourly rates charged by Bernstein Litowitz Berger & Grossmann LLP,

Barrack, Rodos & Bacine, Cohen Milstein Sellers & Toll, PLLC, Finkelstein

Thompson LLP, Murray, Frank, & Sailer LLP, and Saxena White PA in securities

action filed in the E.D. Va.) [Doc. #145-6].)

In addition, the narrative description of the work of the attorneys suggests

that there may have been some duplicative work. While a client paying by the

hour might argue that some of the hours spent by various lawyers on similar tasks

---

[6] Id.

should not be billed, the recovery here – 30% of the Settlement Amount – is less than Lead Counsel might be paid even if those hours were discounted.

Finally, Lead Counsel's request for 30% of the Settlement Amount represents a lodestar multiplier of approximately 0.35. Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee. See Jones, 601 F. Supp. 2d at 766 (listing cases); see also In re Neustar, Inc., 2015 WL 8484438, at *10 (describing the lodestar multiplier of 0.36 as "comfortably below the range of multipliers other courts have found to be reasonable"). However, certainly the low multiplier is due in part to a lodestar resulting from 2,423.10 hours of work at high hourly rates. See Boyd, 299 F.R.D. at 467-68 (noting that the 0.76 multiplier "is, of course, the result of the claim for nearly 3,000 hours at very high rates"). Nevertheless, the multiplier is so far below those generally accepted as demonstrating reasonableness that, in the context of the facts of this case, it does suggest that the requested percentage fee is reasonable.

I.

Even if the factors in In re Cendant, instead of Barber, applied to evaluate the reasonableness of attorney's fees, Lead Counsel's requested attorneys' fees would be reasonable. For reasons explained above, the skill and efficiency of the attorneys, the complexity and duration of the litigation, the risk of nonpayment, the amount of time devoted to the case by plaintiffs' counsel, and the awards in similar cases all support a finding of reasonableness. In addition, among the

20

22,245 Claim Packages mailed to potential members of the class and nominees, as of the March 21, 2016 fairness hearing, there had been no objections to the request for attorneys' fees and expenses. (See Suppl. Decl. of Carole K. Sylvester ¶ 3 [Doc. #134]; Tr. of Fairness Hearing at 3:23-4:7 (Mar. 21, 2016) [Doc. #146].)  This demonstrates the class members' approval of the fees request and is further support of the reasonableness of the request.  While the size of the fund is not particularly large for the number of persons who are potential class members (see Notice of Proposed Settlement of Class Action [Doc. #123-1]), as explained above, the fact that Lead Counsel recovered anything on behalf of class members is notable.

Finally, some courts adopting the In re Cendant factors also evaluate public policy concerns. See, e.g., Jones, 601 F. Supp. 2d at 760; Loudermilk Servs., Inc., 623 F. Supp. 2d at 724.  The public policy analysis involves weighing the public's perception that class action plaintiffs' counsel are overly compensated with the importance of compensating counsel sufficiently to encourage "competent, experienced" counsel "to undertake the often risky and arduous task of representing a class[.]" Loudermilk Servs., Inc., 623 F. Supp. 2d at 724.  As explained above, prosecuting a securities fraud action is not only complex, but is also fraught with risk, risk that Lead Counsel bore over the years' course of this litigation on behalf of the class.  Had Lead Counsel charged an hourly rate for its work, Lead Counsel would have recovered far greater attorneys' fees than it has requested here as a percentage of the Settlement Amount, even if the rates or

hours were discounted.  On balance, public policy also supports a finding of reasonableness.

III.

In addition to attorneys' fees, Lead Counsel requests $105,516.13[7] in expenses, together with interest earned for the same time period and at the same rate earned on the Settlement Fund.  The PSLRA limits the total attorneys' fees and expenses awarded to "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). "There is no doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the common fund." In re MicroStrategy, Inc., 172 F. Supp. 2d at 791 cited in In re Neustar, Inc., 2015 WL 8484438, at *10.

Here, the expenses include those for (1) filing, witness, service, and other fees, (2) publication of notice pursuant to PSLRA, (3) transportation, hotels, and meals, (4) court hearing transcript, (5) private investigators, (6) outside bankruptcy counsel, (7) photocopies, (8) legal and financial research, and (9) appeals filing fee. [Docs. #131, 131-2, 131-3, 131-4, 136-3.]  After a review of counsel's initial filings and subsequent requested filings in support of an award of these expenses, it is determined that these expenses are reasonable in nature and amount considering the legal and factual complexity of this securities fraud action.

---

[7] Lead Counsel submitted this revised expense figure on April 1, 2016. [Doc. #140 & Ex. 1.]

IV.

For the reasons stated herein, IT IS HEREBY ORDERED that Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses [Doc. #126] is GRANTED, that Lead Counsel is awarded attorneys' fees of 30% of the Settlement Amount, plus expenses in the amount of $105,516.13, together with the interest earned on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid, and that the fees and expenses shall be allocated amongst other Plaintiffs' counsel in a manner that Lead Counsel in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the litigation.

This the 9th day of May, 2016.


/s/ N. Carlton Tilley, Jr.
Senior United States District Judge